[No. H016694. Sixth Dist. June 2, 1998.]

CHI-NA USHER, Plaintiff and Respondent, v.
COUNTY OF MONTEREY, Defendant and Appellant.

212

## COUNSEL

Witzig, Hannah & Sanders and Mark P. Witzig for Defendant and Appellant.

Lemaire, Faunce, Pingel & Singer and Edward L. Faunce for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, J.**—The County of Monterey (hereafter the County) appeals from a judgment whereby the trial court granted a petition for a writ of administrative mandamus. The court directed that the County set aside a decision denying disability retirement benefits to employee David Usher, find instead that Usher was disabled and award him disability retirement benefits retroactive to his last day of service. The County argues that the court erred in finding that it did not proceed in the manner required by law in failing to appoint an administrative law judge to conduct the proceedings, and further argues that even if the court's interpretation of the law was correct, the court should have remanded the matter to the County for a new hearing before an administrative law judge rather than directing the County to reverse its decision. We agree with this second point. Under Government Code section 21156 (formerly, § 21025), the County was required to appoint an administrative law judge to conduct the proceedings. Because the hearing officer appointed by the County did not have the authority under the relevant statutes to hear the case and render findings, the County was without jurisdiction to make a decision based on those findings. (See *National Auto. & Cas. Ins. Co.* v. *Downey* (1950) 98 Cal.App.2d 586, 594 [220 P.2d 962].) We will therefore reverse the judgment and direct that the court enter judgment granting the writ petition but remanding the proceedings to the County for a new hearing before an administrative law judge.

### BACKGROUND

In 1981, David Usher began working for the County of Monterey as a deputy sheriff after a career in the United States Army. He was first assigned

to corrections where he spent approximately three years as a jailer. He then served as a bailiff and transportation deputy until December of 1986, when he became ill, complaining of chest pains, shortness of breath and numbness of the left arm. He was hospitalized for several days. His blood pressure and cholesterol were high and he was placed on several medications for these conditions.

Usher's assignments at the county jail and in transportations had been very stressful. He often was asked to transport as many as 20 prisoners at a time, with no backup. In addition to tightness in his chest, he began to feel anxious and depressed. In 1986, his physician placed him on Prozac. Following his illness in December of 1986, his job as bailiff and transportation deputy was divided and he was assigned to transportation deputy duties only. He continued to experience some chest pains and depression and was referred to the county physician, Dr. Nomof, in May of 1987.

Dr. Nomof found that Usher suffered from "arteriosclerotic heart disease" and hypertension and that his condition should be followed closely by a cardiologist. He also noted that the previous year coronary angiograms had revealed a minor lesion in one of the coronary arteries. He put work restrictions on Usher of "Category D," light duty, noting that he believed Usher could "safely continue the work as a Bailiff" with light duty restrictions without undue risk to his heart. In Nomof's opinion, Usher's condition appeared to be stable and medically manageable.

Usher was assigned as a bailiff in traffic court and spent the next two years in that assignment. Although there were occasional stresses, he enjoyed the work and found it "far less stressful" than his previous assignments. Compared to transporting prisoners, his new assignment was, in his words, a "piece of cake." His medical condition stabilized and even improved slightly. A Thallium scan and treadmill test had been performed when he saw Dr. Nomof in May of 1987 and similar tests were done two years later in April of 1989. Comparing the results of these two tests, Dr. Nomof found the later tests indicated "somewhat better heart function" than the earlier ones. "[T]hey reflect continued stability of [Usher's] heart status and indeed even slight improvement in cardiac function." In a report dated October 16, 1989, Dr. Nomof concluded that Usher was "certainly . . . capable" of performing light duty as recommended in 1987.

Dr. Markovitz disagreed somewhat with Dr. Nomof's assessment. He felt that the stress Usher had experienced while at the jail and in transportation had been extreme. Although his new assignment as bailiff was much less stressful, Dr. Markovitz reported that Usher still had chest pains from time to

time. He stated that Usher could continue with his "light duty" work, but believed his arteriosclerosis would advance due to stress.

During the time Usher served as a bailiff in traffic court, his court was near the clerks' office and he frequently interacted with the women clerks. Several incidents were reported during 1988 involving complaints of sexual harassment. The first two incidents were investigated but no formal warning or reprimand was issued. The third incident prompted a verbal warning. In December of 1988, Usher was in a drunk-driving accident, following which he was suspended for two weeks without pay. In July of 1989, after several incidents involving a new clerk at the court, Usher was informed by the County that there would be an investigation into claims of sexual harassment against him. According to him, he was told that he would have to return to his assignment at the jail while the investigation was pending. He testified that when he inquired at the jail, he was told that there were no light duty jobs available.

Usher went to see his regular doctor on July 29, 1989. He was very upset about the sexual harassment charges, which he believed were false and unfair, and about the prospect of having to return to work with prisoners. His doctor found his blood pressure to be extremely high. She advised him to take some time off work, and she increased his Prozac medication and recommended that he see a psychiatrist. He did not return to work after July 29, 1989.

The investigation of the sexual harassment charges went forward and on October 13, 1989, Usher was notified that he was being terminated for cause. He was awarded regular service retirement. He appealed the County's decision to terminate his employment.[1]

On October 26, 1989, Usher applied to the Public Employees' Retirement System (PERS) for disability retirement. On June 26, 1990, the County of Monterey informed PERS of its decision that Usher was not incapacitated for the performance of his duties as deputy sheriff and was therefore not eligible for disability retirement.[2] On June 26, 1991, he appealed this decision. A hearing was held on December 22, 1993, before Hearing Officer Kent Rice and Administrative Law Judge Robert Coffman. Usher testified and numerous medical reports were received as evidence. The parties submitted written briefs.

---

[1] The outcome of this appeal is unknown.

[2] Usher had already filed a workers' compensation claim regarding injuries sustained due to the stress of his work as a jailer and transportation deputy. The workers' compensation matter proceeded to trial and Usher eventually received an award whereby it was found that he had sustained injury to his heart and cardiovascular system as a result of cumulative trauma from 1981 through 1985.

The hearing officer issued his findings on February 1, 1994. He found that the medical reports indicated that Usher was capable of performing his job as bailiff in July of 1989 when he left work, and that he was not substantially incapacitated from his employment when he was terminated in October of 1989. After reconsideration, the hearing officer issued substantially the same findings on April 12, 1994.

Usher filed a petition for a writ of mandate in superior court on August 18, 1994. He alleged the proceedings were unfair because a hearing officer employed by the County, rather than the administrative law judge, conducted the hearing and issued the findings, contrary to the express provisions of Government Code section 21025.[3] In addition he alleged that the weight of the evidence showed that he was entitled to disability pension because the County was not able to provide him with a permanent "light duty" position.

During the superior court hearing on the writ petition, the parties focused on the first of these two issues and the court continued the matter for further briefing on the question whether the County was required to have the hearing conducted by an administrative law judge. At the end of the resumed hearing on December 20, 1996, the court indicated it agreed with Usher on this issue and therefore granted the writ.

On February 4, 1997, a writ of mandamus issued, commanding the County to set aside its decision denying disability pension to Usher and to find that Usher was disabled from performing his duties and was entitled to disability retirement benefits retroactive to his last day of service. The County appeals.[4]

## STANDARD OF REVIEW

The inquiry in an administrative mandamus proceeding is whether there was a fair trial and whether the agency abused its discretion. An abuse of discretion is established if the agency has not proceeded in the manner required by law, the order is not supported by the findings or the findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).)

Here the trial court determined that the County had not proceeded in the manner required by law, pursuant to Government Code section 21025 (now § 21156), by appointing a hearing officer rather than an administrative law

[3]Former Government Code section 21025 is now section 21156. (Stats. 1995, ch. 379, § 2, Sen. Bill No. 541.)

[4]On July 16, 1997, during the pendency of this appeal, Usher passed away. By order of this court dated October 8, 1997, his widow Chi-Na Usher was substituted in place of David Usher.

judge to conduct the appeal hearing. ■ On review in this court, questions of statutory interpretation are questions of law warranting independent review. (*Land* v. *Anderson* (1997) 55 Cal.App.4th 69 [63 Cal.Rptr.2d 717]; *Rosenblit* v. *Superior Court* (1991) 231 Cal.App.3d 1434, 1444 [282 Cal.Rptr. 819].)

## GOVERNMENT CODE SECTIONS 11512 AND 21156

■ The County contracted with a hearing officer to hear Usher's appeal from the denial of disability retirement benefits, and an administrative law judge was appointed to preside over the proceedings. The County contends that such a procedure is specifically authorized under Government Code section 11512. That section provides as follows:

"(a) Every hearing in a contested case shall be presided over by an administrative law judge. The agency itself shall determine whether the administrative law judge is to hear the case alone or whether the agency itself is to hear the case with the administrative law judge.

"(b) When the agency itself hears the case, the administrative law judge shall preside at the hearing, rule on the admission and exclusion of evidence, and advise the agency on matters of law; the agency itself shall exercise all other powers relating to the conduct of the hearing but may delegate any or all of them to the administrative law judge. When the administrative law judge alone hears a case, he or she shall exercise all powers relating to the conduct of the hearing. . . ."

Government Code section 11512 is part of the Administrative Procedure Act (the APA), contained in section 11500 et seq. of the Government Code. These Government Code sections (chapter 5 of part I of division 3 of title 2) describe the formal hearing process for administrative adjudication. PERS, which is the agency ultimately responsible for awarding disability retirement in this case, is one of many state agencies subject to the provisions of the APA. (Gov. Code, § 11501, subd. (b)(49).) PERS law is contained in Government Code section 20000 et seq., and the provisions pertaining to retirement are found in section 21060 et seq. Usher is a local safety member of PERS employed by the County, which is a contracting agency of PERS. (Gov. Code, § 20460.) As the statutory delegate of PERS, the County is subject both to APA procedure and the applicable provisions of PERS law. (See, e.g., *Garner* v. *City of Riverside* (1985) 170 Cal.App.3d 510, 515-517 [216 Cal.Rptr. 486]; *Watkins* v. *City of Santa Ana* (1987) 189 Cal.App.3d

393, 396-397 [234 Cal.Rptr. 406].) Under PERS law, when a local safety member applies for disability retirement, PERS requests the governing body of the contracting agency employing the member to make the determination whether the member is incapacitated for the performance of duty. (Gov. Code, § 21154.)

In June of 1990, the County informed PERS of its decision that Usher was not incapacitated for the performance of his duties within the meaning of PERS law. Usher informed the PERS executive officer on June 26, 1991, that he was requesting an appeal of this decision. For reasons not clear from the record, the initiation of the adjudicative process was delayed for two years. A "Statement of Issues and Notice of Hearing" was eventually sent to Usher by the County on June 30, 1993. In the statement of issues the County informed Usher that an administrative law judge would be presiding over the hearing while a hearing officer would be making the decision regarding entitlement to disability, pursuant to Government Code section 11512. Usher immediately responded, stating his position that he was entitled to have an administrative law judge conduct the entire hearing under Government Code section 21025 (now § 21156).

Government Code section 21025 provided that a local safety member, such as Usher, could appeal the determination of the governing body of the agency contracting with PERS, in this case the County. Effective January 1992, this section was amended and the following sentence was added: "Appeal hearings shall be conducted by an administrative law judge of the Office of Administrative Hearings pursuant to Chapter 5 (commencing with Section 11500) of Part I of Division 3 of this title." (Stats. 1991, ch. 1159, § 1, p. 5561, Assem. Bill No. 2168.) Government Code section 21025 subsequently became section 21156. (Stats. 1995, ch. 379, § 2, Sen. Bill No. 541.) Usher contends that this section takes precedence over Government Code section 11512 and requires that the County appoint an administrative law judge to conduct the appeal hearing. We agree.

First, where state statutes prescribe special hearing provisions for various individual agency proceedings, those provisions prevail over the more general provisions of the APA. (*Noll* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 281, 283 [79 Cal.Rptr. 236].) Recent amendments to the APA, contained in Government Code section 11400 et seq., reiterate this rule: "A state statute . . . applicable to a particular agency or decision prevails over a conflicting or inconsistent provision of this chapter." (Gov. Code, § 11415.20.)

Secondly, Government Code section 21156 does not necessarily conflict with the APA provisions describing the formal hearing process. Section

11512 gives the agency the choice of hearing the case itself, with an administrative law judge presiding, or having the administrative law judge hear the case alone. Section 21156 simply mandates that, in any appeal from a determination under PERS law that the employee is or is not entitled to disability benefits, the agency must follow the APA provisions which provide for an administrative law judge to conduct the hearing alone.

In any event, the procedure used by the County in this case, whereby it contracted with a hearing officer to render a decision on the merits, with an administrative law judge presiding to rule on evidentiary matters, does not in our view comply with either of the two procedures described in Government Code section 11512. Although the administrative law judge "presided over" the hearing and made evidentiary and other rulings, he did not "hear the case alone." (Gov. Code, § 11512, subd. (a).) Nor did the "agency itself . . . hear the case with an administrative law judge." (*Ibid.*) Where the statute refers to the "agency itself," it means that "the power to act shall not be delegated unless the statutes relating to the particular agency authorize the delegation of the agency's power to hear and decide." (Gov. Code, § 11500.) Thus if the County does not use an administrative law judge to hear the case alone, the County's governing body must hear the case itself, with an administrative law judge presiding; in other words, it may not delegate the decision making authority to a hearing officer.[5]

This interpretation is consistent with other provisions of the APA. For example, Government Code section 11517 provides that where the agency itself hears the case no member of the agency who did not hear the evidence shall vote on the decision, and "the agency shall issue its decision" within 100 days of submission of the case. (§ 11517, subd. (a)(2), (3).) Where the administrative law judge hears the case alone, he or she is to submit a proposed decision to the agency within 30 days. (§ 11517, subd. (b).) There is no provision for the procedure which occurred here, where the matter was heard by a hearing officer under contract with the County, who then submitted findings to the County. Indeed, although Usher maintains that the County

---

[5]Under Government Code section 27720, the Board of Supervisors of the County may establish the office of county hearing officer and a duly appointed county hearing officer may be authorized to conduct hearings and to decide the matter and issue a written decision and findings. (Gov. Code § 27722, subd. (a).) However, if such an office is established, and there is no indication in this record that that is the case in the County, the hearing officer or any deputy or assistant must be an attorney licensed to practice for at least five years before appointment. (Gov. Code, § 27724.) The hearing officer in this case was not an attorney.

Board of Supervisors adopted the hearing officer's findings, we are unable to find in this record any formal decision by the County adopting the findings.[6]

We conclude that the County did not proceed in a manner required by law by failing to follow the mandate of Government Code section 21156 to appoint an administrative law judge to conduct the appeal hearing in this matter. Failure to provide an administrative law judge where one is required is a ground for nullifying the agency's action for lack of jurisdiction. (See, e.g., *National Auto. & Cas. Ins. Co.* v. *Downey, supra,* 98 Cal.App.2d 586, 594.) In such a case the reviewing court should remand the matter to the agency for further consideration. (*Ibid.*) Here the superior court issued a writ commanding the County not only to set aside its decision but also to find that Usher was disabled from performing his duties and to provide retroactive disability retirement benefits to him, plus interest. We believe this was error.

Usher argues that we must presume, in the absence of a statement of decision, that the court reached the merits of the case, independently reviewed the evidence and concluded that the findings of the agency were not supported by the weight of the evidence. We cannot accept such a presumption in this case, for several reasons. First, it is clear from the transcript of the proceedings in superior court that the court was focused entirely on the question whether the County could contract with a hearing officer to conduct the hearing in this matter. The court found this to be "an important issue" and continued the hearing to receive further briefing from the parties. The merits of the case were not discussed, or even mentioned, during either segment of the hearing. At one point the court observed: "Well, then, of course, if the conduct on the part of the hearing officer, or hearing officer did not have jurisdiction in this case because of lack of, if you will, following APA requirement, *the whole thing goes out anyway . . . .*" (Italics added.) At the end of the hearing, the court concluded as follows: "You can't go around willy-nilly and appoint anybody, whoever you want, without any regard to conflicts, without any regard to disclosure requirements, without obeying APA rules. [¶] Therefore, the Writ is granted."

We agree with Usher, in theory, that a superior court in a mandamus proceeding involving the denial of disability retirement benefits may independently review the administrative record, reweigh the evidence and make its own factual findings. The trial court may then direct the agency to

---

[6]Because there is no "decision" by the County itself in the record, we reject the County's argument that Usher did not comply with the statute of limitations for filing his petition for a writ of mandate. The statute of limitations is tied to the effective date of the "decision." (See Gov. Code, §§ 11519, 11518, 11523.)

award a disability retirement. (*Levingston* v. *Retirement Board* (1995) 38 Cal.App.4th 996, 1000 [45 Cal.Rptr.2d 386].) Here, however, unlike *Levingston*, the court made no factual findings, even though a statement of decision had been requested by Usher, and nothing in the record indicates that the court reached the merits of the case. The judgment issuing the writ was prepared by counsel for Usher and includes the usual recitation about "[t]he record of the administrative proceedings having been received into evidence and examined by the court. . . ." By this time the judge who had presided at the hearing had retired and the judgment was signed by a different judge.

Even if we were to conclude, however, that in spite of the court's comments at the hearing the court proceeded to reach and decide the merits of this case, our result would be the same. In an evidentiary review in an administrative mandate proceeding, the court determines whether the agency's "decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) Because the administrative hearing here was not conducted by the proper party under the relevant statutes, the hearing officer did not have the authority to render findings and the County did not have jurisdiction to make a decision based on such findings. Thus the court was without power to determine whether the County's decision constituted an abuse of discretion under Code of Civil Procedure section 1094.5.

In sum, the trial court in this case correctly decided that the County had not proceeded in a manner required by law by having a hearing officer conduct the hearing and render findings. Once having decided that, the court was powerless to review the evidence which had been presented at the administrative hearing and should properly have remanded the matter for consideration before an administrative law judge. As the court observed under similar circumstances in *National Auto. & Cas. Ins. Co.* v. *Downey*, *supra*, 98 Cal.App.2d 586, "[s]ince the agency did not have jurisdiction, in that the proceeding under review had not been heard by a properly qualified person, the result is that the issues had not been determined first or at all by the administrative agency. Therefore, the court properly refrained from determining the sufficiency of the evidence. It is clear that the court did not decide the merits of the case." (*Id.* at p. 594.)

### DISPOSITION

We reverse the judgment of the superior court granting the writ petition insofar as it directed the County to find that Usher was disabled and to award him retroactive disability benefits. We direct the superior court to enter a modified judgment granting the writ petition but remanding the proceedings

to the County for a new hearing before an administrative law judge. In all other respects, including the award of costs and fees in the superior court proceeding, the judgment is affirmed. The parties are to bear their own costs in this appeal..

Cottle, P. J., and Mihara, J., concurred.

A petition for a rehearing was denied June 23, 1998.