Filed 10/13/15; pub. order 11/5/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE DEPARTMENT OF HEALTH CARE SERVICES et al., <br><br> Defendants and Respondents. | B252710 <br><br> (Los Angeles County Super. Ct. No. BS142406) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert H. O'Brien, Judge. (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Law Office of Andrew F. Kim and Andrew F. Kim; AIDS Healthcare Foundation, Thomas A. Myers and Samantha Azulay for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim and Kenneth K. Wang, Deputy Attorneys General, for Defendants and Respondents.

_____

**INTRODUCTION**

AIDS Healthcare Foundation and AHF Healthcare Centers (collectively AHF) appeal from the judgment of dismissal entered after the trial court sustained without leave to amend the demurrer by the California Department of Health Care Services and its director Toby Douglas (collectively the Department) to AHF's petition for a writ of administrative mandamus. AHF sought a writ directing the Department (1) to withdraw its order rejecting and remanding an administrative law judge's proposed decision on AHF's administrative claims against the Department, and (2) to adopt as the "Final Decision" certain portions of the administrative law judge's proposed decision and to reject other portions. The trial court concluded that AHF was not entitled to judicial review because it had failed to exhaust its administrative remedies and that there was no applicable exception to the exhaustion requirement. We conclude that the exhaustion requirement bars AHF's petition because AHF's administrative claim is not final and that the Department's administrative processes and procedures were legally adequate and did not violate the law. Therefore, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Contract*

AHF had a contract with the Department to provide health care services in Los Angeles County to beneficiaries of California Medical Assistance Program (Medi-Cal) suffering from acquired immune deficiency syndrome. The contract stated that AHF would provide certain services to the Medi-Cal beneficiaries and receive payment based on the amount that Medi-Cal would have expended had it provided health care for a similar population through a fee-for-service delivery system.[1] The Department also

---

[1]    The "traditional 'fee-for-service' delivery system" is where Medicare (or, in this case, Medi-Cal) beneficiaries "consult private physicians and use private hospitals, and bills for services rendered are sent by the healthcare providers to Medicare for payment.

agreed to give AHF an incentive payment (called a "Savings Share") of 50 percent of any savings that resulted from the arrangement. The contract also required the parties to resolve any disputes pursuant to the administrative hearing and review procedures described in Health and Safety Code section 100171.

### B. *The Administrative Proceedings*

In 2009 a dispute arose between the parties over the Department's rates of payment to AHF for 2009 and 2010 and the Savings Share incentive payments owed to AHF for 2007 and 2008. The Department rejected AHF's claims. AHF appealed and asked the Department to conduct an administrative review hearing under Health and Safety Code section 100171.

The Department selected Administrative Law Judge (ALJ) Dwight V. Nelsen, an ALJ on the staff of the Department's administrative hearings and appeals office, to hear the appeal. ALJ Nelsen, acting as the sole hearing officer, conducted the hearing at the Department's hearing offices.

In December 2012 ALJ Nelsen issued a proposed decision, which ruled in favor of AHF in part and in favor of the Department in part. ALJ Nelsen recommended that the Department adopt his proposed decision as the Department's final decision.

Douglas, the Director of the Department, delegated the agency's authority to act on ALJ Nelsen's proposed decision to the Department's Chief ALJ Sharon Stevenson. In a February 15, 2013 letter to the Department and AHF, Chief ALJ Stevenson stated she was considering rejecting ALJ Nelsen's proposed decision and "either alternating it or remanding this matter for further hearing and a revised decision." On March 1, 2013 Chief ALJ Stevenson issued an order entitled, "Rejection of Proposed Decision and Remand to Take Additional Evidence," citing Government Code section 11517,

---

Medicare determines whether it will pay all or part of the fee (rates of reimbursement are based on the particular medical procedure and the geographic area in which the services are rendered) and any noncovered balance (including any deductible) is the patient's responsibility." (*Solorzano v. Superior Court* (1992) 10 Cal.App.4th 1135, 1140.)

3

subdivision (c)(2)(D).[2] The order remanded the matter to Department ALJ Patricia Freeman (ALJ Nelsen retired from the Department a week after he issued his proposed decision) to consider additional evidence and to conduct further proceedings.

On April 2, 2013 AHF wrote to Chief ALJ Stevenson objecting to her order. AHF pointed out that the Department's ALJ Nelsen had originally conducted the proceedings, and argued therefore that "agency itself" had heard the matter under Government Code section 11517, subdivision (b), not Government Code section 11517, subdivision (c).[3] AHF asserted that, because Chief ALJ Stevenson "did not hear any of the evidence" in the matter, under Government Code section 11517, subdivision (b), she did not have "any right to have any input into the decision" and therefore "lacked the power to issue the Rejection/Remand Order." AHF asked the Department to adopt or "confirm" ALJ Nelsen's Proposed Decision as the Department's final decision.

---

[2] Government Code section 11517, subdivision (c)(2)(D), provides, in pertinent part: "(2) Within 100 days of receipt by the agency of the administrative law judge's proposed decision, the agency may act as prescribed in subparagraphs (A) to (E) . . . . [¶¶] (D) Reject the proposed decision and refer the case to the same administrative law judge if reasonably available, otherwise to another administrative law judge, to take additional evidence. If the case is referred to an administrative law judge pursuant to this subparagraph, he or she shall prepare a revised proposed decision, as provided in paragraph (1), based upon the additional evidence and the transcript and other papers that are part of the record of the prior hearing. . . ."

[3] Government Code section 11517, subdivision (b), provides, in pertinent part: "(b) If a contested case is originally heard before an agency itself, all of the following provisions apply: (1) An administrative law judge shall be present during the consideration of the case and, if requested, shall assist and advise the agency in the conduct of the hearing. (2) No member of the agency who did not hear the evidence shall vote on the decision. (3) The agency shall issue its decision within 100 days of submission of the case." Government Code section 11517, subdivision (c), provides, in pertinent part: "(c) If a contested case is originally heard by an administrative law judge alone, he or she shall prepare within 30 days after the case is submitted to him or her a proposed decision in a form that may be adopted by the agency as the final decision in the case."

4

C.      *The Trial Court Proceedings*

On April 2, 2013, the same day AHF objected to Chief ALJ Stevenson's order, AHF filed a petition for a writ of administrative mandamus in the superior court. AHF sought an order directing the Department to withdraw Chief ALJ Stevenson's order and to adopt certain portions of ALJ Nelsen's proposed decision and to reject other portions. AHF argued that the Department had exceeded its jurisdiction and violated the Administrative Procedures Act (Gov. Code, § 11340 et seq.; APA) by using Department ALJ's to conduct proceedings and decide the matter. AHF further contended that, to the extent that the Department had jurisdiction, the proposed order was an abuse of discretion. AHF also argued that it was entitled to seek judicial review of the Department's proceedings because it had pursued unsuccessfully all available administrative remedies, and it was "not required to exhaust any remaining administrative remedy because the administrative process itself is the cause of the harm that AHF alleges . . . ."

The Department filed a demurrer to the petition, arguing that AHF had "failed to exhaust their administrative remedies and obtain a final decision by the Department and the Director before seeking judicial relief." The Department argued that, because the matter was still pending before ALJ Freeman, AHF's petition for judicial relief was premature. The Department also defended its practice of using Department ALJs to conduct administrative proceedings, arguing that the Department acted within its statutory authority under both the Health and Safety Code and the APA.

The trial court sustained the Department's demurrer without leave to amend. The court ruled that AHF had not stated a cause of action because the administrative decision was not final and therefore AHF had not exhausted its administrative remedies, and that there was "no exception [to] the exhaustion rule nor [was] there any substance to the futility argument because it [was] speculative." Therefore, the court dismissed the petition. AHF timely appealed.

5

**DISCUSSION**

A.      *Standard of Review and Principles of Statutory Interpretation*

"In reviewing an order sustaining a demurrer, we independently evaluate whether the operative complaint states facts sufficient to state a cause of action." (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34; see *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; *Brown v. County of Los Angeles* (2014) 229 Cal.App.4th 320, 322.)  Where, as here, the trial court sustained the demurrer without leave to amend, we determine whether there is a reasonable possibility that the plaintiff can cure the defect by amendment.  (*Loeffler v. Target Corp*. (2014) 58 Cal.4th 1081, 1100.)

This appeal involves the interpretation of statues in the Government Code and the Health and Safety Code.  "Statutory interpretation is a question of law that we review de novo." (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)  "In doing so, 'it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." [Citation.]  If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citations.]  In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. . . .  Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation. [Citation.]' [Citation.]" (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250.)  These extrinsic or "secondary rules of construction" include "maxims of construction, which express familiar insights about conventional language usage; the legislative history; and the wider historical circumstances of a statute's enactment." (*Joannou v. City of Rancho Palos Verdes* (2013) 219 Cal.App.4th 746, 752.)

Finally, "[i]f the ambiguity is not resolved by these secondary rules of construction, we then apply reason, practicality, and common sense. [Citation.]  When

6

doing so, we must consider the potential consequences of a particular interpretation. This includes not just the words chosen by the Legislature, but also matters such as context, the problem to be remedied, the history of the times, legislation on the same subject, public policy and contemporaneous construction. [Citation.] These other matters are important because they elevate our analysis from an abstract exercise in semantics to the only reason we engage in the process at all – to determine the Legislature's intent in order to carry out the purpose of the law." (*Joannou v. City of Rancho Palos Verdes, supra,* 219 Cal.App.4th at p. 752.)

### B. *Exhaustion of Administrative Remedies*

The trial court sustained the Department's demurrer without leave to amend, ruling that AHF had failed to exhaust its administrative remedies because the decision of the Department was not final and that AHF had not demonstrated any applicable exception to the rule requiring exhaustion. The trial court was right on both counts.

### 1. *Exhaustion and Finality*

A party must exhaust its administrative remedies before it seeks judicial review. An administrative remedy is exhausted only upon termination of all available administrative review procedures. (See *City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609 [exhaustion requires "'a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings'"]; accord, *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella Valley*).) "'The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).'" (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080, quoting, *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391.)

7

The doctrine of finality "'is closely related to" the requirement of exhaustion of administrative remedies. (*O.W.L. Foundation v. City of Rohnert Park* (2008) 168 Cal.App.4th 568, 582.) "'A decision attains the requisite administrative finality when the agency has exhausted its jurisdiction and possesses "no further power to reconsider or rehear the claim."' [Citation.] Finality may be defined either expressly in the statutes governing the administrative process or it may be determined from the framework in the statutory scheme. [Citation.] Until a public agency makes a 'final' decision, the matter is not ripe for judicial review." (*California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1485.)

AHF argues that the doctrine of exhaustion of administrative remedies does not bar its petition because the decision of the Department was final at the time AHF sought judicial review.[4] Specifically, AHF asserts that Chief ALJ Stevenson's order rejecting and reconsidering ALJ Nelsen's proposed decision violated both the APA and the Health and Safety Code provisions governing the Department's administrative adjudications, and that therefore ALJ Nelsen's proposed decision became "final" by operation of law. Assessment of AHF's finality argument requires an examination of the statutory framework of the APA and the relevant provisions in the Health and Safety Code that apply to the Department.

### a. *The APA*

The APA is a detailed and comprehensive collection of statutes governing administrative procedures in California, divided into several categories, including statutes that govern the Office of Administrative Hearings (OAH) (Gov. Code, § 11370 et seq.)

---

[4] There are some analytic differences between the doctrines of exhaustion of administrative remedies and finality. (See *California Water Impact Network v. Newhall County Water Dist.*, *supra*, 161 Cal.App.4th at pp. 1485-1490; *Marquez v. Gourley* (2002) 102 Cal.App.4th 710, 715.) Those differences are not significant in this case, however, because AHF argues that it exhausted its administrative remedies *because* ALJ Nelsen's decision was final.

and statutes that govern the adjudication of administrative claims involving state agencies. The provisions of the Government Code governing administrative adjudications are contained in Chapter 4.5 (Gov. Code, § 14000 et seq.), which provides the general provisions for the adjudication of administrative claims,[5] and Chapter 5 (Gov. Code, § 15000 et seq.), which describes the specific procedures for formal hearings.

(i) *The Applicability of the APA*

In general, the APA governs evidentiary hearings conducted by all state agencies. (See Gov. Code, § 11410.20.) The APA applies "to a decision by an agency if, under the federal or state Constitution or a federal or state statute, an evidentiary hearing for determination of facts is required for formulation and issuance of the decision." (Gov. Code, § 11410.10.)

Certain agencies, however, conduct administrative hearings pursuant to enabling statutes or implementing regulations for those agencies that prescribe the relevant procedures and do not incorporate the APA. (See Cal. Law Revision Com. com., 32D West's Ann. Gov. Code (2005 ed.) foll. § 11410.20, p. 271;[6] see e.g., *Department of*

---

[5] In addition to the general provisions for administrative procedures that apply to most administrative proceedings, Chapter 4.5 also contains provisions governing informal hearings, emergency proceedings, and alternative dispute resolution. (See Gov. Code, § 11400 et seq.)

[6] The California Law Revision Commission Comment to Government Code section 11410.20 provides in part: "This chapter is not applicable to specified proceedings of the following state agencies: Alcoholic Beverage Control Appeals Board (Bus. & Prof.Code § 23083)[;] University of California (Educ.Code § 92001)[;] Public Employment Relations Board (Gov't. Code §§ 3541.3, 3563)[;] Commission on State Mandates (Gov't. Code § 17533)[;] Agricultural Labor Relations Board (Lab.Code § 1144.5)[;] Military Department (Mil. & Vet.Code § 105)[;] Department of Corrections, Board of Prison Terms, Youth Authority, Youthful Offender Parole Board, and Narcotic Evaluation Authority (Pen.Code § 3066; Welf. & Inst.Code §§ 1788, 3158)[;] Public Utilities Commission (Pub.Util.Code § 1701)[.]"

*Corrections v. Office of Admin. Hearings* (1997) 53 Cal.App.4th 780, 786 [APA does not apply to the hearing procedures used by the Department of Corrections and Rehabilitation and the Department of Mental Health because the enabling statutes of these agencies do not incorporate the APA].)  Still other agencies, pursuant to their respective governing statutes, follow only selected provisions of the APA.  (See, e.g., Gov. Code, § 19578 [requiring the State Personnel Board to follow provisions of Gov. Code, § 11513, which contains the rules of evidence that apply to administrative proceedings].)

Thus, whether the APA applies to a particular agency and its administrative proceedings in whole or in part depends on the relevant agency's particular statutory and regulatory scheme.  (See Gov. Code, § 11501, subd. (a) [Gov. Code, § 11500 et seq. apply "to any agency as determined by the statutes relating to that agency"]; see also Gov. Code, § 11415.10, subd. (a) ["[t]he governing procedure by which an agency conducts an adjudicative proceeding is determined by the statutes and regulations applicable to that proceeding," and "[i]f no other governing procedure is provided by statute or regulation, an agency may conduct an adjudicative proceeding under the administrative adjudication provisions of the Administrative Procedure Act"].)  Moreover, where statutes prescribe hearing provisions "for various individual agency proceedings, those provisions prevail over the more general provisions of the APA" (*Usher v. County of Monterey* (1998) 65 Cal.App.4th 210, 217; see *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 880, 884), and a statute applicable to a particular agency controls over a conflicting or inconsistent provision of the APA.  (See Gov. Code, § 11415.20 ["[a] state statute or a federal statute or regulation applicable to a particular agency or decision prevails over a conflicting or inconsistent provision"].)

(ii)     *Administrative Contests Under the APA*

Contested administrative hearings under the APA are conducted pursuant to procedures outlined in Government Code section 11517.  Subdivision (a) provides that "[a] contested case may be originally heard by the *agency itself* . . . .  Alternatively, at

10

the discretion of the agency, an *administrative law judge may originally hear the case alone . . . .*" (Gov. Code, § 11517, subd. (a), italics added.)  The agency's choice in subdivision (a) of whether to hear the case "itself" or have an administrative law judge "originally" hear it has significant procedural implications; specifically, the procedures of subdivision (b) apply when the agency hears the case "itself," and the procedures of subdivision (c) apply when an administrative law judge originally hears the case. Whether subdivision (b) or (c) applies is one of the main issues in this appeal.

### (a)    *Proceedings Heard by the "Agency Itself"*

The term "agency itself" as used in Government Code section 11517 means the "head of the agency" or its "governing body."  (*Usher v. County of Monterey*, *supra*, 65 Cal.App.4th at p. 218; accord, *Langan v. City of El Monte* (2000) 79 Cal.App.4th 608, 617-618.)  Pursuant to Government Code section 11500, subdivision (a), the term "agency" includes state boards, commissions, and officers.  Where the statute refers to the "agency itself," "the power to act shall not be delegated unless the statutes relating to the particular agency authorize the delegation of the agency's power to hear and decide." (Gov. Code, § 11500, subd. (a).)  Thus, if an "agency itself" must hear and decide the matter the agency may not delegate the hearing and decisionmaking authority to a subordinate agency hearing officer (i.e., an employee who is neither the agency head nor a member of its governing body), unless the agency's enabling statutes allow the delegation.  (*Usher v. County of Monterey*, *supra*, 65 Cal.App.4th at p. 218; see, e.g., *Greer v. Board of Education* (1975) 47 Cal.App.3d 98, 112-113 [school board, rather than district hearing officer, was required to determine certain issues reserved for the board].)

As noted, if an "agency itself" hears the matter, then Government Code section 11517, subdivision (b), governs the proceedings.  Subdivision (b) provides: "(1) An administrative law judge shall be present during the consideration of the case and, if requested, shall assist and advise the agency in the conduct of the hearing.  [¶] (2)  No member of the agency who did not hear the evidence shall vote on the decision.

11

[¶]  (3) The agency shall issue its decision within 100 days of submission of the case." (§ 11517, subd. (b).)  Interpreting section 11517 soon after the section became effective, the court in *Hohreiter v. Garrison* (1947) 81 Cal.App.2d 384 explained that  "[o]ne of the primary purposes of the Legislature in passing . . . the legislation was to remedy the evils in connection with hearings before administrative boards frequently composed of laymen, untrained in procedure.  To this end there was created the position of hearing officer.  Such officer is a civil service employee and must be an experienced lawyer."  (*Id.* at p. 394.)  Thus, "[i]f the case is heard by the hearing officer and the agency, the agency decides the case with the assistance and advice of the hearing officer."  (*Id.* at p. 395.)

### (b)    *Proceedings Heard by an ALJ Alone*

If an administrative law judge originally hears the case alone, then Government Code section 11517, subdivision (c), governs the proceedings.  Subdivision (c) provides that the ALJ prepare a proposed decision in the form that the agency may adopt as the final decision.  The agency may delegate its authority to review and act on the ALJ's proposed decision.  (See Gov. Code, § 11500, subd. (a) [use of the term "agency itself" in Chapter 5 of APA means the agency generally may not delegate the power to act; use of the term "agency" alone means the agency may delegate the power to act]; Gov. Code, § 11440.10, subd. (a) ["[t]he agency head may do any of the following with respect to a decision of the presiding officer or the agency," including "[d]elegate its review authority to one or more persons"].)

Government Code section 11517, subdivision (c)(2), lists the actions the agency may take with respect to the ALJ's proposed decision.  The agency may:

"(A) Adopt the proposed decision in its entirety.

"(B) Reduce or otherwise mitigate the proposed penalty and adopt the balance of the proposed decision.

"(C) Make technical or other minor changes in the proposed decision and adopt it as the decision. . . .

12

"(D) Reject the proposed decision and refer the case to the same administrative law judge if reasonably available, otherwise to another administrative law judge, to take additional evidence. . . .

"(E) Reject the proposed decision, and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence."

An "administrative law judge" as used in 11517 means an ALJ "qualified" under Government Code 11502. (See Gov. Code, § 11500.) Government Code section 11502, subdivision (b), describes the qualifications: "Each administrative law judge shall have been admitted to practice law in this state for at least five years immediately preceding his or her appointment and must possess any additional qualifications established by the State Personnel Board for the particular position involved." (Gov. Code, § 11502, subd. (b).)

ALJs can come from the OAH or from within an agency. In general, an ALJ on the staff of the OAH and appointed by the director of the OAH must conduct all hearings under the APA. Government Code section 11502 provides: "(a) All hearings of state agencies required to be conducted under this chapter shall be conducted by administrative law judges on the staff of the Office of Administrative Hearings. This subdivision applies to a hearing required to be conducted under this chapter that is conducted under the informal hearing or emergency decision procedure provided in Chapter 4.5 (commencing with Section 11400). [¶] (b) The Director of the Office of Administrative Hearings has power to appoint a staff of administrative law judges for the office as provided in Section 11370.3." Only the Director of the OAH can appoint ALJ's from the staff of the OAH. Government Code section 11370.3 provides: "The director shall appoint and maintain a staff of full-time, and may appoint pro tempore part-time, administrative law judges qualified under Section 11502 which is sufficient to fill the needs of the various state agencies. The director shall also appoint any other technical and clerical personnel as may be required to perform the duties of the office. The

13

director shall assign an administrative law judge for any proceeding arising under Chapter 5 (commencing with Section 11500) and, upon request from any agency, may assign an administrative law judge to conduct other administrative proceedings not arising under that chapter and shall assign hearing reporters as required. Any administrative law judge or other employee so assigned shall be deemed an employee of the office and not of the agency to which he or she is assigned."

Nevertheless, certain California agencies maintain their own administrative hearing offices and employ and appoint "in-house" ALJ's to conduct administrative adjudications rather than using ALJs from the OAH. (See, e.g., Gov. Code, § 18671 [civil service hearings]; Veh. Code, § 14100 et seq. [hearings to suspend or revoke driver's licenses]; Welf. & Inst. Code, § 10953 [social service entitlement claims conducted by ALJ's on the staff of the Department of Social Services]; Bus. & Prof. Code, § 24210, subd. (a) [claims involving applications for and revocations of alcohol licenses].) And, where a statute authorizes an agency to select one of its in-house ALJ's to conduct administrative proceedings, that statute controls over the APA statutes that require an ALJ on the staff of the OAH to conduct the proceedings. (See *County of San Diego v. Alcoholic Beverage Control Appeals Bd.* (2010) 184 Cal.App.4th 396, 402 ["the general provisions under the APA that a hearing must be conducted by an administrative law judge on the staff of the Office of Administrative Hearings can be trumped by specific provisions governing a particular state agency"]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 99 Cal.App.4th at pp. 884-885 ["'[t]he governing procedure by which an agency conducts an adjudicative proceeding is determined by the statutes and regulations applicable to that proceeding,'" and "'[a] state statute . . . applicable to a particular agency . . . prevails over a conflicting or inconsistent provision of'" the APA].)

b. *Health and Safety Code Administrative Adjudications*

Pursuant to their contract, Health and Safety Code section 100171 governed the resolution of the dispute between AHF and the Department. Section 100171, which

14

describes the procedures and law that apply to adjudicative proceedings conducted by the Department, essentially incorporates some of the provisions of the APA and opts out of others.  The statute provides:  "Notwithstanding any other provision of law, whenever the department is authorized or required by statute, regulation, due process . . . or a contract, to conduct an adjudicative hearing leading to a final decision of the director or the department, the following shall apply:  (a) The proceeding shall be conducted pursuant to the administrative adjudication provisions of Chapter 4.5 (commencing with Section 11400) and Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, except as specified in this section."  (Health & Saf. Code, § 100171, subd. (a).)  Health and Safety Code section 100171 specifies certain exemptions from the provisions of the APA and incorporates other sections of the APA.[7] It also contains administrative adjudication procedures that differ in some respects from those in the APA.

Relevant in this case, subdivision (b) of Health and Safety Code section 100171 exempts the Department from Government Code section 11502, which relates to the appointment of ALJ's from the OAH staff, and instead requires that the Department select an administrative law judge to conduct any administrative hearing at the

---

[7]     For example, the statute includes an exemption from the timeframes contained in Government Code section 11517.  (See Health & Saf. Code, § 100171, subd. (e) ["[t]he specific timelines specified in Section 11517 of the Government Code shall not apply to any adjudicative hearing conducted by the department to the extent that the department has, by regulation, specified different timelines for the particular type of hearing at issue."].)  Health and Safety Code section 100171, subdivision (d)(1), also adopts certain provisions of the APA:  "Unless otherwise specified in this section, the following sections of the Government Code shall apply to any adjudicative hearing conducted by the department only if the department has not, by regulation, specified an alternative procedure for the particular type of hearing at issue:  Section 11503 (relating to accusations), Section 11504 (relating to statements of issues), Section 11505 (relating to the contents of the statement to respondent), Section 11506 (relating to the notice of defense), Section 11507.6 (relating to discovery rights and procedures), Section 11508 (relating to the time and place of hearings), and Section 11516 (relating to amendment of accusations)."

15

Department's hearing office. Section 100171, subdivision (b) provides: "Notwithstanding Section 11502 of the Government Code, whenever the department conducts a hearing under Chapter 4.5 (commencing with Section 11400) or Chapter 5 (commencing with Section 11500) of . . . the Government Code, the hearing shall be conducted before an administrative law judge selected by the department and assigned to a hearing office that complies with the procedural requirements of Chapter 4.5 (commencing with Section 11400) of Part 1 of Division 3 of Title 2 of the Government Code." Although Health and Safety Code section 100171 does not state that the Department must maintain an in-house staff of Department ALJ's, the statutory scheme, including the reference in subdivision (c) to the Department's "staff assigned to the hearing office *of the department*" (italics added), implies that the Department has an internal staff of ALJs. (See § 100171, subd. (c) ["whenever the department conducts a hearing . . . the time and place of the hearing shall be determined by the staff assigned to the hearing office of the department"].)

c. *The Administrative Adjudication in This Case*

To hear AHF's claims, the Department, pursuant to Health and Safety Code section 100171, selected an in-house ALJ from the Department staff, ALJ Nelsen, who, acting pursuant to Government Code section 11517, subdivision (c), heard the matter alone and rendered a proposed decision.[8] Thereafter, Director Douglas delegated the

---

[8]     There is no evidence in the record that AHF objected to the assignment of ALJ Nelsen. AHF did not complain that his selection was improper because he was employed and assigned by the Department rather than the OAH. Nor is there any evidence that AHF objected that ALJ Nelsen did not have the requisite qualifications under the APA to serve as an ALJ. AHF apparently never complained to ALJ Nelsen that, because he was a Department employee, he lacked authority to hear the matter alone under Government Code section 11517, subdivision (c), or that, if proceeding under Government Code section 11517, subdivision (b)(1), an ALJ from OAH had to be present to assist during the hearing. AHF did not raise the issue of ALJ Nelsen's status until Chief ALJ Stevenson rejected ALJ Nelsen's proposed decision, at which point AHF argued for the first time that the Department had erred in proceeding under Government Code section

16

agency's authority to act on ALJ Nelsen's proposed decision to the Department's Chief ALJ Sharon Stevenson. Stevenson, relying on Government Code section 11517, subdivision (c)(2)(D), rejected the proposed decision and remanded the matter to ALJ Freeman to develop more evidence and for further consideration.

The Department asserts that the administrative proceedings concerning AHF's claims complied with Health and Safety Code section 100171 and Government Code section 11517. Therefore, according to the Department, its adjudication of AHF's claims was not final when AHF sought judicial review, and the trial court properly concluded that AHF had failed to exhaust its administrative remedies.

AHF argues that the Department's adjudicative process violated the APA in various respects and, as a result, ALJ Nelsen's proposed decision effectively became the "final decision" of the Department. To that end, AHF contends that, pursuant to Health and Safety Code section 100171, the Department had the option of selecting an ALJ from the OAH or an ALJ from the Department. AHF contends that where, as here, the Department selects an in-house ALJ from its own staff, rather than one appointed by the director of the OAH from the OAH's staff of ALJ's, then the proceedings were or should be deemed conducted by the "agency itself." Therefore, AHF argues, because the "agency itself" heard the matter, the Department was required to proceed according to Government Code section 11517, subdivision (b), which provides that only members of the agency who heard the evidence can "vote" on the decision. As a result, according to AHF, the Department was not allowed to designate the Department's Chief ALJ Stevenson to review and reject ALJ Nelsen's proposed decision. AHF also contends that

11517, subdivision (c), rather than subdivision (b). Thereafter, to bolster its argument that the Department was required to proceed under Government Code section 11517, subdivision (b) (because the "agency itself" had heard the matter), AHF initially argued that Health and Safety Code section 100171 provided an exemption to the requirement in Government Code section 11517, subdivision (b)(1), that an administrative law judge must be present when the agency itself conducts the proceedings. In its reply brief, however, AHF argues that it "waived" (by operation of law) any requirement under Government Code section 11517, subdivision (b)(1), that another ALJ assist ALJ Nelsen.

17

Chief ALJ Stevenson lacked authority to remand the matter to a new ALJ – ALJ Freeman – to conduct additional proceedings.[9] AHF reasons that, because the Department did not follow the proper procedures under Government Code section 11517, subdivision (b), the decision of ALJ Nelsen became "final" and the Department had to adopt and implement it.

(i) *Interpretation of Health and Safety Code Section 100171*

AHF's argument is based on an incorrect interpretation of the applicable statutes, including Health and Safety Code section 100171. Considered together with the statutory scheme in the APA and the provisions of Health and Safety Code section 100171 governing the appointment of ALJs, section 100171 does not give the Department an option to choose either an ALJ from the Department staff or an ALJ from the staff of the OAH. It requires the Department to select an ALJ from its in-house staff of ALJ's.

It is clear that Health and Safety Code section 100171, subdivision (b), mandates that an ALJ conduct the proceedings and that the Department select the ALJ. Health and Safety Code section 100171, subdivision (b), states that "[n]otwithstanding Section 11502" the hearing "shall be conducted before an administrative law judge *selected by the Department*" and assigned to a Department hearing office. (Health & Saf. Code, § 100171, subd. (b), italics added.) Consistent with the requirement that the Department select the ALJ, subdivision (b) exempts the Department from the requirement of Government Code section 11502, subdivision (b), that the director of the OAH select the ALJ. In addition, because Health and Safety Code section 100171, subdivision (b), does not authorize the Department director, any Departmental body, or any non-ALJ

---

[9] AHF does not challenge the delegation by Douglas of his authority to Chief ALJ Stevenson. AHF's complaint centers on Chief ALJ Stevenson's exercise of that authority by rejecting the proposed decision and remanding the matter to develop additional evidence.

18

Department representative to conduct the hearings, the "agency itself" cannot hear the matter.

It is not entirely clear, however, whether this exemption in subdivision (b) also excuses the Department from the requirement of Government Code section 11502, subdivision (a), that the ALJ must be selected from the OAH ALJ staff. The more reasonable interpretation of this ambiguity in the statute, however, is that it does. The reference in Health and Safety Code section 100171, subdivision (b), to Government Code section 11502 is the broad and all-inclusive "[n]otwithstanding section 11502," which suggests that hearings under Health and Safety Code section 100171 proceed in spite of the procedures set forth in all of Government Code section 11502. (See *Davis v. Fresno Unified School District* (2015) 237 Cal.App.4th 261, 281 ["the ordinary meaning of the word 'notwithstanding' is 'in spite of'"]; accord, *In re G.Y.* (2015) 234 Cal.App.4th 1196, 1201.) In addition, there is no other language in Health and Safety Code section 100171 that implies the Department may select an ALJ from the OAH staff. In fact, the APA does not authorize anyone other than the director of the OAH to select and appoint ALJ's on OAH staff to hear administrative matters that, like this one, are conducted (at least in part) under Chapter 5 of the APA. (See Gov. Code, § 11370.3.) As reflected in Health and Safety Code section 100171, the Department is among the state agencies, such as the Department of Social Services, the Alcoholic Beverage Control Appeals Board, and the Department of Motor Vehicles, that maintain a staff of ALJ's and hearing offices.

Thus, Health and Safety Code section 100171 requires all adjudicative hearings be heard by an in-house ALJ appointed by the Department. And, in light of APA's provisions governing the appointment of ALJs in general, Health and Safety Code section 100171 requires the Department to assign an ALJ from its staff of ALJ's.[10]

_____

[10]  Equally unconvincing is AHF's proposed interpretation of Health and Safety Code section 100171 as merely exempting the Department from the requirement in Government Code section 11517, subdivision (b)(1), that an ALJ be present when the

19

In any event, even assuming the Department was authorized to select an ALJ from the OAH staff, its failure to do so in this case does not mean, as AHF argues, that the "agency itself" conducted the hearing under Government Code section 11517, subdivisions (a) and (b). Rather, the failure to select an appropriate ALJ simply means that the wrong hearing officer conducted the proceedings. Nor does the fact that ALJ Nelsen worked for the Department (rather than the OAH) lead to the conclusion that the "agency itself" conducted the hearing. ALJ Nelsen was not qualified to act as the "agency itself" because, as noted, in this context the phrase "agency itself" means "governing body" or "agency head." (See *Usher v. County of Monterey*, *supra*, 65 Cal.App.4th at p. 218, accord *Langan v. City of El Monte*, *supra*, 79 Cal.App.4th at pp. 617-618.) ALJ Nelsen held neither of these positions in the Department.

Moreover, nothing authorizes the Department to delegate its power to ALJ Nelsen to hear and decide the matter. (See Gov. Code, 11500, subd. (a) ["wherever the words 'agency itself' are used the power to act shall not be delegated unless the statutes relating to the particular agency authorize the delegation of the agency's power to hear and decide"].) Although Health and Safety Code section 100171 requires an ALJ to conduct the hearings, the power to "decide" is reserved for the director of the Department. (See (Health & Saf. Code, § 100171 [describing administrative proceedings "leading to a final decision of the director"].) Thus, in view of the definition of "agency itself," and the limitations placed on ALJ Nelsen's authority under Health and Safety Code section 100171, the Department's selection of ALJ Nelsen to hear the matter cannot mean that the "agency itself" conducted the proceedings under Government Code section 11517, subdivisions (a) and (b).

---

"agency itself" hears the matter. Health and Safety Code section 100171, subdivision (a), states that all proceedings under section 100171 must be conducted pursuant to the administrative provisions of the APA except as specified in the section. (Health & Saf. Code § 100171, subd. (a).) There is no exemption in Health and Safety Code section 100171 for the requirement in Government Code section 11517, subdivision (b)(1).

(ii) *Interpretation of Government Code Section 11517*

AHF's argument also misconstrues Government Code section 11517, subdivisions (a) and (c). AHF's proposed interpretation of the statute is based on the faulty assumption that *only* an ALJ on staff at OAH and assigned by the OAH director may "hear the case alone" under Government Code section 11517, subdivisions (a) and (c). As support for this interpretation, AHF points to the definition of "administrative law judge" in Government Code section 11500, which states: "In this chapter unless the context or subject matter otherwise requires: [¶] . . . [¶] (d) 'Administrative law judge' means an individual *qualified* under Section 11502." (Gov. Code, § 11500, subd. (d), italics added.) Being "qualified" under Government Code section 11502, however, relates to basic qualifications for the ALJ position described in detail in Government Code section 11502. (See Gov. Code, § 11502, subd. (b) [the ALJ "shall have been admitted to practice law in this state for at least five years immediately preceding his or her appointment" and possess other qualifications established by the State Personnel Board].) Government Code section 11500, subdivision (d), does not refer to who appoints the ALJ or to the office that employs the ALJ. Based on the reference in Government Code section 11500, subdivision (d), to "an individual qualified" under Government Code section 11502, Government Code section 11500, subdivision (d), incorporates only the "qualifications" described under Government Code section 11502, and not the other provisions of Government Code section 11502. Had the Legislature intended to incorporate the entirety of Government Code section 11502 into Government Code section 11500's definition of ALJ, the Legislature would have done so. Thus, an ALJ, other than one from the staff of the OAH appointed by the director of the OAH, may "hear the case alone" under Government Code section 11517. (See, e.g., *Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1013-1014 [ALJ employed and appointed by the Department acting alone presided over the matter pursuant to Government Code section 11517].)

21

Our conclusion that the Department's in-house ALJ's can hear matters alone under Government Code section 11517, subdivisions (a) and (c), finds further support in another subdivision provision of Health and Safety Code section 100171. (See *Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 244 [court construes "words in context, keeping in mind the statutory purpose, and harmonizes statutes or statutory sections relating to the same subject, both internally and with each other, to the extent possible"].) Subdivision (f) of Health and Safety Code section 100171 refers to the Department proceeding pursuant to Government Code section 11517, subdivision (c). (See Health & Saf. Code, § 100171, subd. (f) ["[i]n the case of any adjudicative hearing conducted by the department, 'transcript,' as used in subdivision (c) of Section 11517 of the Government Code, shall be deemed to include any alternative form of recordation"].) Although the issues in this case do not involve the use of transcripts or alternative forms of recordation, the fact that Health and Safety Code section 100171, subdivision (f), refers to Government Code section 11517, subdivision (c), is significant. The reference in subdivision (f) of Health and Safety Code section 100171 to subdivision (c) of Government Code section 11517 is a tacit acknowledgement that the Department is empowered to conduct proceedings under subdivision (c) of section 11517 of the Government Code (i.e., the Department's ALJs hear contested matters alone). (See Gov. Code, § 11517, subd. (c)(1) [contested case is originally heard by an administrative law judge alone]. ) Thus, the fact that Health and Safety Code section 100171 refers to proceedings under Government Code section 11517, subdivision (c), confirms that the Legislature intended Department ALJs to act alone to hear matters pursuant to Government Code section 11517, subdivision (c). (*See Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 566.)

Finally, even if AHF were correct that the Department failed to use the appropriate ALJ to conduct the proceedings in the case, such a failure would not mean that the decision reached by ALJ Nelsen becomes "final." Instead, it would mean that, because an unauthorized ALJ conducted the proceedings, the matter must be returned to the agency for consideration by an authorized, appropriately-appointed ALJ. (See *Absmeier*

22

*v. Simi Valley Unified School District* (2011) 196 Cal.App.4th 311, 320 ["'[f]ailure to provide an administrative law judge where one is required is a ground for nullifying the agency's action for lack of jurisdiction,'" and "'[i]n such a case the reviewing court should remand the matter to the agency for further consideration'"], citing *Usher v. County of Monterey*, *supra*, 65 Cal.App.4th at p. 219.) AHF does not ask for this remedy.

### (iii) *Conclusion*

Therefore, based on our interpretation of the relevant sections of the APA and Health and Safety Code section 100171, we conclude that the Department's administrative proceedings complied with the APA and the Health and Safety Code. The Department properly selected ALJ Nelsen to conduct the adjudicative hearing alone. The designee of the Department director, Chief ALJ Stevenson, acting pursuant to Government Code section 11517, subdivision (c)(2)(D), properly considered and rejected the proposed decision, and remanded the case to ALJ Freeman because ALJ Nelsen was no longer available. Because the Department had not made a final determination on AHF's claims, the doctrine of exhaustion barred AHF's petition for writ of administrative mandamus.

### 2. *Exceptions to Exhaustion of Administrative Remedies*

AHF also contends, in the alternative, that exceptions to the exhaustion requirement apply to its petition. Courts recognize several exceptions to the exhaustion of administrative remedies doctrine, including where seeking the administrative remedy is futile or the remedy is inadequate. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080; *Paulsen v. Local No. 856 of Internat. Brotherhood of Teamsters* (2011) 193 Cal.App.4th 823, 829.) AHF argues that both of these exceptions apply here. Neither does.

The futility exception applies when "resort to the administrative process would be futile because it is clear what the agency's decision would be." (*Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 222; accord, *Cummings v. Stanley* (2009) 177

23

Cal.App.4th 493, 506, fn. 8; see, e.g., *Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1015-1016 [automobile dealer objecting to the termination of its franchise was not required to pursue additional administrative remedies where the administrative law judge stated, "'*There shall be no further proceedings in this cause before the Board*'"].) AHF asserts that the futility exception applies because the Department's decision to reject its claim is a foregone conclusion. The outcome of the proceedings, however, has not been determined or predetermined. One ALJ found in favor of AHF on some of its claims, and the Department has not made a final decision. The Department did not, pursuant to Government Code section 11517, subdivision (c)(2)(E), reject ALJ Nelsen's proposed decision and decide the case, but instead, pursuant to Government Code section 11517, subdivision (c)(2)(D), rejected ALJ Nelsen's proposed decision and referred the case for additional evidence and consideration. The futility exception to the exhaustion doctrine does not apply. (See *Coachella Valley*, *supra*, 35 Cal.4th at pp. 1080-1081 ["'[t]he futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case"'"], quoting, *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936.)

AHF also argues it was not required to exhaust its administrative remedies because the remedy was inadequate. "If an administrative remedy fails to satisfy the standards of due process, the exhaustion requirement is excused." (*Imagistics Intern., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 591; see *Jonathan Neil & Associates, Inc. v. Jones, supra,* 33 Cal.4th at p. 936, fn. 7 ["''[i]f the [administrative] remedy provided does not itself square with the requirements of due process the exhaustion doctrine has no application"'"].) The administrative remedy is also inadequate where the challenged administrative procedures "''"are the very source of the asserted injury"'" for which the plaintiff sought a remedy. (*Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 168; *see Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center* (2001) 93 Cal.App.4th 607, 621 ["'[a] party is not required to exhaust the available administrative remedies when those administrative procedures are

24

the very source of the asserted injury'"].  In particular, exhaustion of administrative remedies is not required where the plaintiff is challenging the adequacy of administrative appeal procedures.  (*Brown v. City of Los Angeles*, at p. 168.)  "'This rule is merely another facet of the inadequate administrative remedy exception to the exhaustion rule.'" (*Unnamed Physician v. Board of Trustees*, at p. 621; see *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1127.)

AHF challenges the Department's administrative process, which AHF asserts is legally inadequate and violates the APA.  AHF argues that the Department's administrative adjudication effectively denied it a full and fair determination on the merits.  Thus, according to AHF, the Department's procedures """"are the very source of the asserted injury"""" for which AHF seeks a remedy.  (*Brown v. City of Los Angeles*, *supra*, 102 Cal.App.4th at p. 168; see *Chrysler Corp. v. New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034, 1038-1039.)

The inadequate remedy exception does not apply.  First, as discussed, the Department's adjudicative proceedings did not violate the APA or the Health and Safety Code, and therefore its procedures are not the "source of" AHF "injury."  Second, AHF's petition was not limited to an attack on the legal adequacy of the Department's administrative processes.  Although AHF's arguments on appeal focus exclusively on the legal adequacy of the Department's adjudicative procedures, AHF's claims before the trial court did not.  Instead, AHF's claims in the trial court were also about the underlying merits of its contract dispute with the Department, and AHF sought to obtain a reversal of those portions of the ALJ's order that AHF contended were wrongly decided.  The principal sources of the injury alleged in the petition were AHF's claims that ALJ Nelsen had refused to award AHF "not less than $966,881.50" on its 2007 Savings Share claim and had refused to order the Department to recalculate its 2008 Savings Share "using actuarially sound methodologies, principles and practices."  Such claims do not render an administrative remedy legally inadequate under the exhaustion doctrine; an administrative remedy is not inadequate simply because it is not the result desired.  (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 322-323 ["courts

25

have found the [exhaustion requirement] inapplicable only when the agency lacks authority to hear the complaint, not when the administrative procedures arguably limit the remedy the agency may award"].) Therefore, AHF's claims do not fall within the "legally inadequate remedy" exception to the exhaustion of the administrative remedies doctrine. [11]

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.


SEGAL, J.

We concur:


ZELON, Acting P. J.


BECKLOFF, J.[*]

---

[11] AHF has not suggested, nor do we discern, how further amendment could cure the defect in its petition. (See *Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126 [party opposing the demurrer has the burden of showing a reasonable possibility of cure by amendment].)

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE DEPARTMENT OF HEALTH CARE SERVICES et al., <br><br> Defendants and Respondents. | B252710 <br><br> (Los Angeles County Super. Ct. No. BS142406) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT** |

*THE COURT:


The opinion in the above-entitled matter filed on October 13, 2015 was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

This order does not change the judgment.

_____

*ZELON, Acting P. J.          SEGAL, J.          BECKLOFF, J. (Assigned)